IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KELEHER & McLEOD PA, and
SEAN OLIVAS, ESQ.,

       Appellants/Cross-Appellees,

v.                                          CIV 05-0809 JH/KBM

DAVID BRIAN DERRINGER,

       Appellee/Cross-Appellant.

# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION ON BANKRUPTCY APPEAL

This matter consists of bankruptcy cross-appeals under 28 U.S.C. § 158(a) and was referred to me for a recommended disposition. *Doc. 3*. For reasons that will become apparent, the Bankruptcy Record on Appeal lodged with this court is incomplete. However, the Bankruptcy Court records and the Tenth Circuit Bankruptcy Appellate Panel ("BAP") docket sheet are available electronically, and this Court has electronic access to them. To avoid further delay in disposition of this matter, I consulted those records and cite them directly below. Having carefully considered the arguments, pleadings, and relevant law, I recommend that Bankruptcy Judge McFeeley's decision be affirmed in part and reversed in part.

## I. Factual Background

### A. *The Derringer/Nevitt District Court Cases*

For over a decade, Appellee David Derringer and his now ex-wife Susan Nevitt, have been disputing a state water rights claim. After failing to prevail in state court, collectively they began

filing numerous *pro se* federal suits. The suits assigned to Chief Judge Vázquez are: *Derringer v. New Mexico Supreme Court, et al.*, CIV 02-1075 MV/WDS, *consolidated with Derringer v. D'Antonio,* CIV 03-90 MV/DJS; and *Derringer v. Fitch*, CIV 03-149 MV/RLP. The suits assigned to Judge Johnson are: *Derringer v. Chapel, et al.,* CIV 02-974 WJ/RLP, *Nevitt v. Fitch,* CIV 02-1580 WJ/LFG, and *Derringer v. Chapel, et al.,* CIV 03-804 WJ/RHS. The suit assigned to Judge Parker is: *Nevitt v. Fitch,* CIV 03-155 JP/WDS.[1]

Because of the frivolous and vexations nature of those suits, Derringer is under filing restrictions in this district. *See, e.g., Derringer v. Chapel, et al.,* CIV 03-804 WJ/RHS (Doc. 14); *Nevitt v. Fitch,* CIV 03-155 JP/WDS (Doc. 15). Those restrictions were affirmed by the Tenth Circuit, which itself had been subjected to "factually unsupported, outrageous, scandalous, and vituperative" filings by Derringer. *Derringer v. Chapel,* 98 Fed. Appx. 728, 739 (10th Cir. 2004); *see also In re Derringer,* 330 B.R. 880, 2005 WL 2216327 at **1-2 (B.A.P. 10th Cir. 2005) (comprehensive discussion of background).

### B. Tenth Circuit Award Of Attorney Fees To Defendants

Several state judges are among the defendants that Derringer and Nevitt sue, and those judges are represented by Sean Olivas of Keleher & McLeod, PA. *See Derringer v. Chapel, et al.,* CIV 03-804 WJ/RHS (representing Judge Alarid, Judge Fitch, Judge Fry, and Judge Pickard); *Nevitt v. Fitch,* CIV 03-155 JP/WDS (representing Judge Fitch); and *Derringer v. Chapel, et al.,* CIV 02-974 WJ/RLP (representing Judge Fitch). Derringer and Nevitt have also filed suit against their neighbors, the Chapels.

---

[1] Derringer filed two other suits that are tangentially related to the water rights dispute. *See Derringer v. Denko,* CIV 03-290 MCA/LAM, *dismissal affirmed,* 126 Fed. Appx. 901 (10th Cir. 2005); and *Derringer v. Snyder,* CIV 03-291 MV/KBM (*dismissed*).

Each of the three suits cited in the previous paragraph were assigned to either Judge Johnson or Judge Parker, dismissed, and then appealed to the Tenth Circuit. In one of them, the Chapels had moved for an award of fees, and Judge Johnson had granted to them fees in the amount of $6,161.20 before a notice of appeal was filed. *See Derringer v. Chapel, et al.,* CIV 02-974 WJ/RLP (Doc. 42). Meanwhile, in Chief Judge Vázquez's cases, the Chapels and Judge Fitch had moved for an award of attorney fees. *See Derringer v. New Mexico Supreme Court, et al.*, CIV 02-1075 MV/WDS (Doc. 69); *Derringer v. Fitch,* CIV 03-149 MV/RLP (Doc. 14, filed 04/12/2004 at 04:04:20 PM).[2]

After the Tenth Circuit affirmed dismissal of the Johnson/Parker suits, all defendants asked for an award of attorney fees for defending the frivolous appeals. On August 19, 2004, the Tenth Circuit concluded that an award of attorney fees against Plaintiffs was warranted, but remanded "these appeals to the district court for the sole and limited purpose of determining a reasonable fee." The Tenth Circuit decision specifically noted that the district court should only consider the reasonableness of an award as to Derringer because his co-Plaintiff had filed for bankruptcy. *Derringer v. Chapel, et al.,* CIV 03-804 WJ/RHS (Doc. 50); *Nevitt v. Fitch,* CIV 03-155 JP/WDS (Doc. 23); and *Derringer v. Chapel, et al.,* CIV 02-974 WJ/RLP (Doc. 51).

### *C. Proceedings In The District And Bankruptcy Courts After Remand*

After remand from the Tenth Circuit, the following chronology of relevant events

---

[2] As it turns out, Judge Fitch's motion for attorney fees in the Vázquez case was filed the same day that the Tenth Circuit decided the Johnson/Parker appeals. From the language in the brief, however, it appears that counsel was unaware the appeals had been decided when the motion for fees was filed. *See Derringer v. Fitch,* CIV 03-149 MV/RLP (Doc. 14, at 2; after listing cases Derringer and Nevitt have filed, stating "Plaintiff has also unsuccessfully appealed several of these rulings, while other appeals on some of these cases are currently pending in the Tenth Circuit.").

occurred.

On August 27, 2004, Judge Johnson ordered briefing on the fees issue per the remand in his two cases. *See Derringer v. Chapel, et al.,* CIV 03-804 WJ/RHS (Doc. 51); *Derringer v. Chapel, et al.,* CIV 02-974 WJ/RLP (Doc. 52).

On September 8 and 9, 2004, the defendant judges filed their materials as ordered. *See Derringer v. Chapel, et al.,* CIV 03-804 WJ/RHS (Doc. 54); *Derringer v. Chapel, et al.,* CIV 02-974 WJ/RLP (Docs. 54-55).

On October 6, 2004, Derringer filed a Chapter 13 petition for bankruptcy at the Bankruptcy Court at 3:28 p.m. *See In re: David Derringer,* No. 13-04-17330 MA (Doc. 1) (hereinafter "*Derringer Bankruptcy*"). Derringer's responses to the motions for fees in the Johnson cases were filed thirty minutes later. *See Derringer v. Chapel, et al.,* CIV 03-804 WJ/RHS (Doc. 56); *Derringer v. Chapel, et al.,* CIV 02-974 WJ/RLP (Doc. 56). The record does not reflect whether these filings were in person or by mail. Nothing indicates that Derringer informed the presiding district judges that he had just filed for bankruptcy. Eventually, he did file a notice in two cases, but that was not done until October 15, 2004 and October 18, 2004, respectively. *See Derringer v. Chapel, et al.,* CIV 03-804 WJ/RHS (Doc. 57); *Derringer v. Fitch,* CIV 03-149 MV/RLP (Doc. 18).

On October 8, 2004, the Bankruptcy Court sent out thirteen notices according to the "Certificate of Service." Judge Fitch and Sean Olivas are not listed among the recipients, but the "Keleher and McLeod Law Firm" is. *See Derringer Bankruptcy* (Doc. 3 at 6). The notice mentions that the "filing of the bankruptcy case automatically prohibits certain collection and other actions against the debtor." *Id.* at 1. According to Bankruptcy Judge McFeeley's findings,

4

which are not contested, all persons on Derringer's "mailing list" were also served. That list includes Judge Fitch in care of Olivas, as well as Olivas himself, and the address for them was the Keleher & McLeod firm. *See id.* (debtor mailing list, available on ACE); *see also id.* (Doc. 132 at 2, ¶ 5) (hereinafter "*McFeeley Opinion*"); Doc. 6 at 4, ¶ 2 (hereinafter "*Appellants' Brief-In-Chief*").

It is also uncontested that at some unspecified date after October 8, 2004 but before October 18, 2004, Olivas and Keleher & McLeod had notice of Derringer's bankruptcy. Despite notice of Derringer's bankruptcy, Olivas filed several documents on behalf of his clients, including reply briefs and notices of completion ("NOC") on the remanded attorney fees issues. It is undisputed that Olivas did not seek to a lift the bankruptcy stay before these documents were filed. Nor did Olivas inform the presiding district judges that Derringer had filed for bankruptcy, or that he believed his attorney fees pleadings were not subject to the automatic stay. *See Derringer v. Chapel, et al.,* CIV 02-974 WJ/RLP (Docs. 54, 55, 57, 58); *Derringer v. Fitch,* CIV 03-149 MV/RLP (Docs. 16, 20). In one case, Olivas submitted a reply brief and NOC after Derringer had filed the belated notice of bankruptcy in that action. *See Derringer v. Chapel, et al.,* CIV 03-804 WJ/RHS (Docs. 53, 57, 58, 59).

## II.  Procedural Background

Derringer moved for sanctions in his civil and bankruptcy actions, arguing that Olivas' filings violated the automatic stay. *See Derringer Bankruptcy* (Docs. 9-11); *Derringer v. Chapel, et al.,* CIV 03-804 WJ/RHS (Doc. 60); *Derringer v. Chapel, et al.,* CIV 02-974 WJ/RLP (Doc. 59); *Derringer v. Fitch,* CIV 03-149 MV/RLP (Doc. 19). In the District Court, Judge Johnson struck all pleadings filed by any party after the date Derringer filed his notice of the

bankruptcy. *See Derringer v. Chapel, et al.,* CIV 03-804 WJ/RHS (Docs. 57, 61); *Derringer v. Chapel, et al.,* CIV 02-974 WJ/RLP (Doc. 60). Chief Judge Vázquez likewise stayed decision on the award of reasonable attorney fees incurred on the frivolous appeal, but briefing was completed on Derringer's motion for sanctions. *See Derringer v. Fitch,* CIV 03-149 MV/RLP (Doc. 22, 24-26).

In both the bankruptcy action and the cases pending before the district judges, Olivas and his firm took the position that they filed in good faith and did not violate the automatic stay because: (1) the automatic stay does not apply to actions initiated by the debtor against the creditor; and (2) the notices of completion were simply ministerial acts. *See Derringer Bankruptcy* (Docs. 28-30); *id.* (Doc. 280 at 20) (hereinafter "*Bankruptcy Hearing Transcript*"); *Derringer v. Fitch,* CIV 03-149 MV/RLP (Doc. 20). As seen below, their arguments met with inconsistent outcomes.

### *A. Decisions in the Bankruptcy Action*

Judge McFeeley held a hearing on January 31, 2005, and he issued his decision on February 16, 2005. *See Bankruptcy Hearing Transcript; McFeeley Opinion.* He found that Derringer failed to show that the state judges had actual notice of the notice of the bankruptcy, and therefore denied Derringer's motion for sanctions against them.

On the other hand, Judge McFeeley awarded compensatory and punitive damages against Olivas and the firm, and rejected the argument and the authorities they had relied upon. He specifically disagreed with a Ninth Circuit's determination that a "request for attorneys' fees included as part of the underlying motion [to dismiss or for summary judgment] did not constitute a counterclaim against the debtor." *See McFeeley Opinion* at 6. Judge McFeeley felt that the Tenth Circuit's pre-petition award of fees served an apt analogy to a creditor pursuing a

6

counterclaim in a proceeding initiated by the debtor.[3]  Thus, he held that pursuit of the attorneys' fees award violated the automatic stay even though the debtor had initiated the civil lawsuit before filing for bankruptcy.

Judge McFeeley further rejected the argument that the filing of a reply brief and NOC for the attorneys' fees motion constituted mere "ministerial acts" not subject to the automatic stay.[4] Looking to the plain language of 11 U.S.C. § 362, he found that by filing the documents, the defendants "were attempting to collect on a pre-petition obligation (the Tenth Circuit's pre-petition award of attorneys' fees) of the Debtor." *McFeeley Opinion* at 6.  Judge McFeeley awarded $340 actual damages to reimburse Derringer for expenses he had incurred traveling from Quemado to Albuquerque to conduct legal research and writing, and also awarded punitive damages in the amount of $1,000.  *McFeeley Opinion* at 5-8.

Within ten days of Judge McFeeley's decision, Derringer filed a motion under Bankruptcy Rules 9023 and 9024/Federal Rules 59 and 60.  *See Derringer Appeal* (Doc. 140).  The filing of this motion extended the time to appeal until after its disposition.[5]  Derringer asserted that: the

---

[3] A creditor/defendant's pursuit of counterclaims is clearly subject to the stay.  *See, e.g., In re Way*, 229 B.R. at 14 ("a counterclaim is an 'action or proceeding against a debtor' and relief from the stay . . . must be sought in order to continue its prosecution postpetition," citing *In re Merrick,* 175 B.R. at 336).

[4] As noted later, Chief Judge Vázquez reached the opposite conclusion where only an NOC was at issue, and dismissed Derringer's motion for sanctions.  *See Derringer v. Fitch,* CIV 03-149 MV/RLP (Doc. 26)).

[5] *See* FED. R. BANKR. P. 8002 (a)-(b) (time for filing appeal is "within 10 days of the date of the entry of the judgment, order, or decree;" but if a motion is timely filed under Rules 9023 or 9024, time for appeal "runs from the entry of the order disposing of the last such motion outstanding"); FED. R. BANKR. P. 9023 (FED. R. CIV. P. "59 . . . applies"); FED. R. BANKR. P. 9024 (FED. R. CIV. P. "60 . . . applies"); FED. R. CIV. P. 59(c) ("Any motion for a new trial shall be filed no later than 10 days after entry of the judgment.").

individual judges were liable for actual and punitive damages by virtue of the actions of their attorney; Derringer should have been awarded multiple actual and punitive damages awards totaling over half a million dollars (*i.e.*, an award of $340 and $25,000 in punitive damages from each defendant for every pleading that was filed after the automatic stay went into effect); and Judge McFeeley was biased against him since he did not award the massive sum of money.  *Id.*

On July 20, 2005, Judge McFeeley denied Derringer's motion under Bankruptcy Rules 9023 & 9024/Federal Rules 59 & 60.  *See id.* at 206 (hereinafter "July 20th/Doc.206 decision"). *Id.* (Doc. 206).  The same day, he also denied other motions Derringer had filed.  *See id.* (Docs. 207 & 208).

Two days after Judge McFeeley's July 20th/Doc. 206 decision, Olivas and the firm filed a notice of appeal as well as a notice that they elected to have the appeal heard by a district judge instead of the Bankruptcy Appellate Panel ("BAP").  *Id.* (Docs. 216, 218).  That case was opened as the present matter on July 27, 2005.  *See Doc. 1*.

Meanwhile, eight days after Judge McFeeley's July 20th/Doc. 206 decision, Derringer filed his own notice of appeal with the Tenth Circuit from all of the decisions Judge McFeeley made on that day.  *Id.* (Doc. 229) (designating Documents 206, 207 & 208 as those being appealed).  The only issues Derringer presented in his appeal at that time concerned actual and punitive damages for asserted violations of the bankruptcy stay.  *Id.* (Doc. 239); *see also id.* (Doc. 238) (*Note*: Derringer notation on partial docket sheet designating documents for inclusion in the record on appeal included items pertaining to other matters as well).

Olivas and his firm wanted any and all issues in Derringer's cross-appeal to be decided here in the district court.  *Id.* (Doc. 245).  The Bankruptcy Appeal Panel partially agreed.  It

8

bifurcated Derringer's notice of appeal into two separate appeals. The BAP retained certain issues, but sent those pertaining to the Judge McFeeley's July 20th/Doc. 206 decision to this district court for its review. *See id.* (Doc. 249 at 3) (Derringer's sanctions appeal given number "NM-05-071"); *id.* (Doc. 250) (transferring "NM-05-071" to this district on August 15, 2005). The BAP transfer order for the Derringer appeal was docketed in this matter on August 17, 2005 rather than being opened as a separate action. *See Doc. 4.*

The only bankruptcy record on appeal lodged with the district court clerk was that of Olivas and his firm. None was lodged for Derringer's cross-appeal for reasons that are unclear. Thus, when I entered the briefing schedule order, it was not readily apparent that this action consists of two appeals. The briefs filed by the parties did not make that fact plain either. Nevertheless, during the course of working on this matter, I discovered the cross-appeal. As it turns out, Derringer largely reiterates the issues he raised before Judge McFeeley and in the BAP pleadings. Since I have access to all of those, I find it unnecessary to order further briefing and will instead proceed directly to the merits.

## III. Analysis

As they did below, Appellants argue that they did not violate the automatic stay because the pleadings regarding fees were filed in a suit brought by Derringer, the notices of completion were a ministerial act, and, since the law is not clear on this point, they did not have "fair warning" that the filings would violate that stay. They further argue that the because the law was unclear, their conduct was not sufficiently egregious to warrant punitive damages. *See Doc. 6.* In their reply, Appellants raise a new argument that compensatory damages for expenses related to filing a motion for sanctions simply are not recoverable. *See Doc. 8.* Olivas and his firm rely

upon two decisions from the Ninth Circuit – *In re. Way,* 229 B.R. 11 (B.A.P. 9th Cir. 1998) and *In re Merrick,* 175 B.R. 333 (B.A.P. 9th Cir. 1994). They also rely upon Chief Judge Vázquez's decision in the *Derringer* case over which she presided.

In an appeal from a decision finding a violation of the automatic stay, the Tenth Circuit BAP set out the applicable standards for review:

> "Whether a party's actions have violated the automatic stay is a question of law which is reviewed *de novo*." *Barnett v. Edwards (In re Edwards),* 214 B.R. 613, 618 (9th Cir. BAP 1997) (citations omitted). We review the bankruptcy court's finding that a creditor's action constituted a willful violation of the stay for clear error. *McHenry v. Key Bank (In re McHenry),* 179 B.R. 165, 167 (9th Cir. BAP 1995); *Franchise Tax Bd. v. Roberts (In re Roberts),* 175 B.R. 339, 343 (9th Cir. BAP 1994). An award of sanctions for a violation of the automatic stay is reviewed for an abuse of discretion. *Edwards,* 214 B.R. at 618.
>
> Under the abuse of discretion standard, a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances. When we apply the "abuse of discretion" standard, we defer to the trial court's judgment because of its first-hand ability to view the witness or evidence and assess credibility and probative value. *United States v. Ortiz,* 804 F.2d 1161, 1164 n. 2 (10th Cir. 1986); *see also Moothart v. Bell,* 21 F.3d 1499, 1504 (10th Cir.1994) (quoting and applying this standard); *McEwen v. City of Norman,* 926 F.2d 1539, 1553-54 (10th Cir. 1991) (same). An abuse of discretion may occur if a court bases its ruling on a view of the law that is erroneous. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405 (1990).

*In re Diviney,* 225 B.R. 762, 769 (B.A.P. 10th Cir. 1998); *see also, e.g., In Re Yates,* 332 B.R. 1, 4 n.5 (B.A.P. 10th Cir. 2005) (citing *Diviney* standard); *In re Johnson,* 2005 WL 2300370 at *5 (B.A.P. 10th Cir. 2005) (quoting the above standard and stating "We see no basis to depart from the standard of review outlined in *Diviney.*"). With one exception noted below, I cannot conclude

that Judge McFeeley abused his discretion or committed clear error under the above standards.

The purpose of the automatic stay is not only to "protect the debtor and his creditors by allowing the debtor to organize his affairs," but also to ensure "that the bankruptcy procedure may operate to provide an orderly resolution of all claims." *Pursifull v. Eakin,* 814 F.2d 1501, 1504 (10th Cir. 1987); *see also Fortier v. Doña Anna Plaza Partners,* 747 F.2d 1324, 1330 (10th Cir. 1984). The bankruptcy court "retain['s] control over the resolution of all claims pertaining to the debtor and the bankruptcy estate" and the "decision as to whether to lift the stay is committed to the discretion of the judge presiding over the bankruptcy proceedings." *Pursifull,* 814 F.2d at 1504.

In light of these purposes, the broad language of the automatic stay provision prohibits a creditor from "enforcing" a judgment obtained before the bankruptcy was instituted, "any act" to recover a claim that arose before the bankruptcy suit was instituted, or "continuing" a judicial proceeding that commenced before the bankruptcy suit was instituted. *See* 11 U.S.C. §§ 362(a)(1), (2), (6). Indeed, the Tenth Circuit has cited with approval a decision holding that this section even prohibits telephone calls from a creditor to a debtor.[6]

---

[6] From the standpoint of the customers, the automatic stay provision of the Bankruptcy Code that took effect upon the filing of the Chapter 11 petition prevented them from taking virtually any action to collect debts owed to them or to recover their property held by the broker-dealer. The automatic stay "provides for a broad stay of litigation, lien enforcement, and other actions, judicial or otherwise, which would affect or interfere with property of the estate, property of the debtor, or property in the custody of the estate." 2 COLLIER ON BANKRUPTCY ¶ 362.01, at 362-8 to-9 (15th ed. 1992); *see* 11 U.S.C. 362(a) (1988 & Supp. II 1990). One provision of § 362(a) operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," 11 U.S.C. § 362(a)(3) (1988). A further provision of § 362(a), applicable to all entities, stays "any act to collect, assess, or recover a claim against the debtor that arose before the

Conversely, the debtor is not prohibited by the automatic stay from prosecuting his own pre-bankruptcy lawsuits. *See e.g., In re Lyngholm,* 24 F.3d 89 (10th Cir. 1994). Both of the decisions upon which Appellants rely note the same. *See Way,* 229 B.R. at 13-14 and *Merrick,* 175 B.R. at 337-38. Permitting the debtor to pursue pre-petition claims may benefit the bankruptcy estate and thereby the creditors. *E.g., In re Mid-City Parking, Inc.,* 332 B.R. 798, 815-16 (Bankr. N.D. Ill. 2005).

*Merrick* and *Way* stand for the proposition that in fairness, a creditor should be able to **_defend_** a pre-bankruptcy suit brought by the debtor even while a stay is in place. Indeed, Judge McFeeley found that one NOC did not violate the stay because it related to **_Derringer's_** motion for reconsideration of rulings against him that had ripened pre-bankruptcy, but for which he neglected to file a notice of completion. *See McFeeley Opinion* at 65 n. 1; *see also Derringer v. Fitch,* CIV 03-149 MV/RLP (Docs. 13, 15, 17).

Neither cited case, however, supports the position that defendants' attempts to recover attorney fees awarded on appeal are exempt from the automatic stay. In *Merrick,* the court found no violation of the automatic stay where a creditor won a pre-bankruptcy pending motion for summary judgment and the motion was granted post-bankruptcy. The court reasoned that the result was consistent with the purposes of the automatic stay – a defendant who successfully

---

commencement of the case under this title. . . ." § 362(a)(6); *see also In re Price,* 103 B.R. 989, 992 (Bankr.N.D.Ill.1989) (noting "telephone call to collect a pre-petition debt" prohibited under stay), *aff'd,* 130 B.R. 259 (N.D.Ill. 1991). Thus the automatic stay provisions clearly appear to inhibit attempts by the customers to obtain their money or property from [the debtor].

*Securities Investor Protection Corp. v. Blinder, Robinson & Co., Inc.,* 962 F.2d 960, 965-66 (10th Cir. 1992).

defeats a debtor's suit on the merits does not "take possession" of the any part of the bankrupt estate, because "[t]here can be no loss of what does not exist." *Merrick,* 175 B.R. at 337-38.  The dissent, however, contended that the significant cost award assessed against the debtor resulting from the grant of summary judgment constituted a violation of the bankruptcy stay.  *Id.* at 338-39.  The majority disagreed because the creditor had "disclaimed his interest" in an award of costs before the hearing on the motion.  *Id.* at 338.  By waiving costs, the creditor at issue did not "cause[] the estate harm or disadvantage." *Id.*

In *Way,* one creditor sought to join in another creditor's pre-bankruptcy motion to dismiss.  The *Way* court simply stated that "the request for attorneys' fees and costs contained in [the] joinder in the motion to dismiss did not constitute a counterclaim. . . ." *Way*, 229 B.R. at 14.  The court noted, however, that even if the request for fees and costs was considered comparable to a counterclaim, there was no violation of the  automatic stay because "the state court's order dismissing the complaint actually did not award any attorneys' fees or costs." *Id.*

Thus, the cases upon which Appellants rely are clearly distinguishable from the case at bar, and cannot support their position that the law was unclear.  Even Chief Judge Vázquez noted in her opinion, "the term 'action or proceeding,' for purposes of § 362(a)(1), is construed to include ***any*** pleading that asserts a claim on which relief is sought," and "the automatic stay applies to a motion seeking an award of attorney's fees against the debtor." *Derringer v. Fitch,* CIV 03-149 MV/RLP (Doc. 26 at 3) (emphasis added).

Most importantly, the Tenth Circuit ***in this very case*** put Olivas and his firm on notice that the awarded fees could not be pursued in district court if a bankruptcy was pending:

> [I]n March 2004, Susan Nevitt filed Chapter 7 bankruptcy

13

> proceedings in New Mexico. Our review of the bankruptcy court's docket sheet shows that those proceedings are still on-going. ***In the absence of an order from the bankruptcy court lifting the automatic stay, we cannot adjudicate Judge Fitch's request for attorney fees against Nevitt.*** We will therefore abate that request until the bankruptcy proceedings have terminated. Ms. Nevitt and Judge Fitch are ordered to file bi-monthly status reports advising us of the status of the bankruptcy proceedings so that we may know when we are free to proceed. ***Because Derringer is not a debtor in those proceedings, we may proceed on the fee requests as they relate to him immediately.***

*Derringer v. Chapel, et al.,* CIV 03-804 WJ/RHS (Doc. 50) (emphasis added).

Moreover, it is not just the debtor's interests at stake. "'The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors.'" *Merrick,* 175 B.R. at 336 n.4 (quoting Notes of the Committee on the Judiciary, H.R. Rep. No. 585, 95th Cong., 1st Sess. 340-41 (1977)). Allowing Appellants to pursue matters on remand to recover attorney fees would defeat this purpose. So although the Tenth Circuit does recognize equitable considerations in considering the automatic stay, it does so only where the purposes of the stay are met.[7]

I further find, as did Judge McFeeley, that the filings of Olivas and his firm constituted more than "ministerial acts" and thereby violated the stay. Chief Judge Vázquez noted that this presents "the more difficult question" when she decided that the filing of an NOC is a mere ministerial act in *Derringer v. Fitch,* CIV 03-149 MV/RLP (Doc. 26 at 3-4). In doing so, she

---

[7] *See, e.g., In re Calder,* 907 F.2d 953, 956-57 (10th Cir. 1990) (inequitable to allow debtor who made false oaths in filing for bankruptcy in order to gain the benefit of the automatic stay); *Fortier,* 747 F.2d at 1330 ("Extending the stay to protect solvent co-defendants would not advance either of the purposes underlying the automatic stay.").

14

stated that

> [t]he acts required by Local Rule 7.3(b) are plainly defined and nothing is left to the exercise of the attorney's discretion or judgment. Thus, the acts required by Local Rule 7.3(b) [filing an NOC] are ministerial in nature and cannot violate the automatic stay provision.

*Id.* I would note that Olivas and his clients failed to alert Chief Judge Vázquez that Judge McFeeley had earlier found to the contrary in the bankruptcy case. That is unfortunate because I think that she would have found his careful analysis persuasive.

Thus, I respectfully disagree with characterizing the NOC filing as "ministerial."[8] By submitting it to the court, the filer seeks the judge's ruling on the issue, and thus signals that the

---

[8] As a member of the Advanced Court Engineering ("ACE") committee, I can further provide some institutional knowledge as to the origination of the NOC. Long before computers reigned, courtroom deputies managed their judge's caseload using only a typewriter and phone. A docketing clerk downstairs in the office of the clerk would type the title of a pleading or motion onto the official docket sheet while making a carbon copy of the entry. The carbon copy, also known as a "flimsy," served to notify the upstairs courtroom deputy of the filing so that he or she could calculate deadlines for the response and reply briefs. Once that time had run, the motion was considered "ready for ruling" and delivered to the judge for consideration.

This process placed a heavy burden on the courtroom deputy, and burgeoning caseloads necessitated a new solution to case management. Federal practitioners still shudder when they hear mention of the infamous "motion packet rule." The local rule required parties to serve motions, responses and replies, but prohibited filing those documents until the fully briefed packet could be submitted to the court ready for the its consideration. Thus, the litigants were now tasked with assuring that any request for relief was still in controversy and with alerting the court to its need for action on the request.

But Bill Gates changed all of that. Along with the District of New Mexico's ACE team's decision to explore electronic filing came new challenges, among them a replacement for the packet rule. Thus, the notice of completion, or NOC, was born. The NOC was designed to provide the courtroom deputy with all of the information needed to guarantee that only "ripe" motions would be placed on the list of matters needing the court's attention. Further, the NOC directs the judge and his staff where to locate all of the relevant arguments and exhibits required for a timely decision.

The filing of an NOC was intended to give some control to the litigants in the management of their cases. A motion would only be decided if it either had no merit on its face or the movant notified the court by an NOC that a live controversy still existed and that briefing was complete. No longer would an attorney be placed in the awkward position of contacting chambers to see if the judge was aware that a motion was pending and that his clients were anxiously awaiting a ruling.

15

matter is properly before the court. As Judge McFeeley stated, the filing of an NOC, much like a brief, requests action by the court. Here, it sought recovery of attorneys' fees from Derringer. *McFeeley Opinion* at 6.

Having given the issue *de novo* review, I believe that Judge McFeeley properly found a violation of the automatic stay. In Derringer's latest appeal, the Tenth Circuit BAP instructed:

> A willful violation of the automatic stay occurs when the creditor acts deliberately with knowledge of the bankruptcy petition. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded.

*In re Derringer*, 251 B.R. 597, 601-02 (B.A.P. 10th Cir. 2005) (unpublished), citing *In re Diviney*, 225 B.R. 762 (10th Cir. BAP 1998). Section 362(h) of the Bankruptcy Code provides that "[a]n individual injured by any ***willful*** violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, ***in appropriate circumstances***, may recover punitive damages."

There is no dispute that Olivas and his firm were aware of Derringer's bankruptcy petition before they intentionally filed the documents seeking to recover the attorney's fees that had been awarded by the Tenth Circuit.[9] Thus, Appellants' violation of the automatic stay was "willful" and that with that finding, an award of actual damages is mandated. *See McFeeley Opinion* at 7.

Judge McFeeley awarded $340.00 actual damages for the traveling expenses Derringer incurred going "from Quemado to the University of New Mexico Law Library to complete his

---

[9] Chief Judge Vázquez was justifiably "concerned that Defendant, who apparently was aware of Plaintiff's bankruptcy filing, filed a notice of completion of briefing on a motion subject to the automatic stay without informing the Court of Plaintiff's bankruptcy filing." *Derringer v. Fitch,* CIV 03-149 MV/RLP (Doc. 26 at 5, n.3). Because she found the NOC to be ministerial only, however, she declined to impose sanctions.

legal research, drafting his motions, and sending facsimiles." *Id.*; *see also Bankruptcy Hearing Transcript* at 9 (Derringer testimony that he incurred costs of $250 for travel and $85 for long-distance faxes); *id.* at 24 ("Mr. Derringer: I['m] not asking for attorney's fees. I am only asking for actual damages which were my time, gasoline, paper, ink, expenses of responding to all this").

Appellants argue in their reply that these costs Derringer incurred in filing his motion for sanctions are not recoverable, and they rely on Chief Judge Vázquez's opinion on that point. That argument has been waived, however, because Appellants did not raise it in their opening brief.[10] I cannot say that Judge McFeeley's award of compensatory damages was in error.

Judge McFeeley also awarded punitive damages, however, and that is somewhat problematic. Noting that punitive damages may be awarded under "appropriate circumstances," Judge McFeeley noted the two "standards" set forth in *In re Ratliff,* 318 B.R. 579 (Bankr. E.D. Ok. 2004). *See McFeeley Opinion* at 7. Under the first standard, the court must determine whether the creditor "acted with actual knowledge that he was violating a federal protected right or with reckless disregard of whether he was doing so." Under the second standard, the court here must give due consideration to four factors: the nature of Appellants' conduct; their motives;

---

[10] *See Pascall Group, Inc. v. Steel Reclamation Resources, Inc.,* 1996 WL 570424 at * 3 (10th Cir. 1996) ("Appellants did not raise the burden of proof issue in their opening appellate brief in the district court. The district court determined that appellants had waived the issue. We agree. *See, e.g., United States v. Price,* 176 B.R. 807, 809 (N.D.Ill. 1993), *aff'd ,* 42 F.3d 1068 (7th Cir. 1994); *cf.* Bankruptcy Rule 8010(a)(1)(C)(party appealing to district court must identify issues in opening brief."). I disagee with Olivas that he and his firm were answering to an issue first raised by Derringer in his response. Rambling as it is, the only damages "issue" raised in Derringer's appeal/response brief is that he should be awarded multiples for each violation against each defendant. *Compare In re Hall,* 1998 WL 77746 (10th Cir. 1998) ("The Walters responded to the Rule 7014 argument in their reply brief. We therefore deem the Rule 7014 argument to have been raised below. *See Sadeghi v. INS,* 40 F.3d 1139, 1143 (10th Cir. 1994) (court considered issue argued for the first time in reply brief because petitioner was responding to issue respondent raised in its brief.").

their ability to pay; and any provocation by Derringer. *McFeeley Opinion* at 7-8.

The Tenth Circuit BAP acknowledged these two standards in the 1998 *In re Diviney* decision. In that case, the court emphasized that the bankruptcy court had made findings on each of the factors set forth in the second standard. *See* 225 B.R. at 776-77. The transcript here reveals that Judge McFeeley focused on Olivas' actual knowledge of the bankruptcy filing.[11] Judge McFeeley then imposed sanctions taking into account Olivas and his firm's ability to pay and the need to deter such filings. However, Judge McFeeley did not make findings on recklessness, nature of Olivas' conduct or motives, or any provocation for the action. *See McFeeley Opinion* at 8.

Although Appellants acknowledge the two *Ratliff* standards, they contend that the bankruptcy court must also make a finding of "'appropriate circumstances,' defined as 'egregious, intentional misconduct on the violator's part.'" *See Doc. 6* at 8-9. For this proposition, they cite to *In re Jackson,* 251 B.R. 597, 602 (Bankr. D. Utah 2000), which in turn quotes an Eighth Circuit decision.

Indeed, in Derringer's most recent bankruptcy appeal, the Tenth Circuit BAP adopted this standard based on Sixth and Seventh Circuit precedent:

> Even in cases where the automatic stay has been violated, an award of punitive damages is not justified unless evidence of "egregious, intentional misconduct on the violator's part" has been shown.

*In re Derringer,* 2005 WL 3105619 at * 4 (B.A.P. 10th Cir. 2005) (internal quotations omitted). This decision makes no mention of the two standards mentioned in *Diviney* or *Ratliff*.

---

[11] Olivas was not present at the hearing, and his attorney conceded actual knowledge that Derringer had filed for bankruptcy protection. She nevertheless argued that the conduct should not be sanctionable because it was made in "good faith." *See Bankruptcy Hearing Transcript* at 20-22.

Although the case law is far from uniform with respect to when and under what circumstances punitive damages are awarded," the new standard announced in the recent *Derringer* decision appears to be the majority view.  *See In re Heghmann,* 316 B.R. 395, 405 (B.A.P. 1st Cir. 2004).  Although the standard was set forth in an unpublished decision, it is nonetheless a decision in the case at bar and arguably the law of the case doctrine applies.  The court should leave it to Judge McFeeley on remand, to determine whether the new standard supplants or supplements the *Diviney/Ratliff* tests.

As for Derringer's arguments in his cross-appeal, I find them frivolous.  He did not present any evidence that he incurred other than $340 in actual damages, or that the individual defendants were aware of the stay.  *E.g., In Re Yates,* 332 B.R. at 7 ("statute provides for damages upon a finding that the defendant ***knew*** of the automatic stay ***and*** that the defendant's actions which violated the stay were ***intentional***.") (emphasis added).  Finally, nothing in the record other than Derringer's unsupported assertions evidence any bias on the part of Judge McFeeley.  *Accord, Derringer,* 98 Fed. Appx. at  739.

Wherefore,

**IT IS HEREBY RECOMMENDED** that the Bankruptcy Court be affirmed in part and reversed in part.  The punitive damages award should be VACATED and the matter REMANDED to the Bankruptcy Court for further proceedings on the issue of punitive damages in light of the seemingly new standard announced in *In re Derringer,* 2005 WL 3105619 (B.A.P. 10th Cir. 2005).  In all other respects, the decision of the Bankruptcy Judge should be affirmed.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1).  **A party must file any objections with the Clerk of the District Court within the ten-day period  if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE